J-S17016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF: C.D.A., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.C.B., FATHER | : : : : : : : | |
| | : | No. 187 WDA 2023 |

Appeal from the Decree Entered January 17, 2023
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
2022-00074

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JULY 7, 2023**

D.C.B. ("Father") appeals from the decree dated January 13, 2023, and entered January 17, 2023, in the Erie County Court of Common Pleas, involuntarily terminating his parental rights to his son, C.D.A. ("Child").[1] Further, counsel for Father ("Counsel"), has filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After review, we grant the petition to withdraw and affirm the termination decree.

---

[1] By separate decree dated December 22, 2022, and entered December 27, 2022, the orphans' court terminated the parental rights of Child's mother, C.A.A. ("Mother").  Mother did not file an appeal and did not participate in the instant appeal.

The orphans' court aptly summarized the factual and procedural history as follows:

> [Child] was born [in December 2018]. … [Father] has been incarcerated since June 8, 2018 and was still in that status as of the date of the [involuntary termination] hearing on January 13, 2023. [Child] (and a sibling)[2] were the subject of an Emergency Protective Order dated August 30, 2021. At a shelter care hearing on August 31, 2021, sufficient evidence was presented that return of [C]hild to the home of [Mother] was not in the best interest of [] Child, and that [] Child should remain in foster care[.]
>
> An adjudication hearing was held on September 9, 2021. [] Mother was present and represented by counsel. [] Father was not present or represented by counsel. [Child] was adjudicated a dependent child at that hearing. The grounds for the adjudication were the substance abuse concerns as to [] Mother[,] who had tested positive for substances at the time of [sibling]'s birth and admitted to ongoing drug use. Additionally[,] there were concerns for untreated mental health and deplorable home conditions. [Father] was incarcerated and unable to care for [] Child.
>
> The juvenile court hearing officer proceeded to a dispositional hearing following the September 9, 2021 adjudication hearing. The following permanency plan for [Father] was recommended and ultimately endorsed by the court on September 15, 2021:
>
> > 1. Participate in any programs available to him while incarcerated, including parenting classes and anger management; and
> >
> > 2. Contact [Erie County Office of Children and Youth] ("the Agency") upon his release from prison to develop a treatment plan.
>
> The court ordered [] Child's permanent placement goal to be return to parent or guardian and that [] Child remain in [his] foster home. A three [] month permanency review hearing was to be scheduled.

---

[2] Child's sibling is not a subject of this appeal.

On December 20, 2021, the initial permanency review hearing took place. At the time of the hearing, [] Father was not present or represented by counsel. The court found that there had been minimal compliance by the Father with the permanency plan. The court also found that there had been minimal progress toward alleviating the circumstances which necessitated placement. The court ordered [] Child's permanent placement goal remain return to a parent or guardian and that [] Child remain in [his] foster home. A three [] month review hearing was to be scheduled.

On March 14, 2022[,] the second permanency review hearing took place. At the time of the hearing, the Father was not present or represented by counsel. The court found that there had been no compliance by [] Father with the permanency plan and no progress towards alleviating the circumstances which brought the child into placement. The court ordered [] Child's permanent placement goal was to return to parent or guardian concurrent with adoption and that [] Child's placement continue in [his] foster home. A four [] month review hearing was to be scheduled.

The third permanency [review] hearing took place on July 13, 2022. [Father] was not present or represented by counsel. Following testimony, the [c]ourt determined that there had been no compliance by [] Father with the permanency plan and no progress in alleviating the circumstances which necessitated placement. The court changed the permanent placement plan to adoption.[3] The Agency was no longer to offer services, including visitation, to [] Father.

Orphans' Court Opinion, 3/14/23, at 1-3 (superfluous capitalization omitted).

On October 13, 2022, the Agency filed a petition for the involuntary termination of parental rights. Specifically, the Agency sought termination pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On October 20,

_____

[3] No appeal was filed with respect to the goal change.

2022, the court appointed Deanna L. Heasley, Esquire, as legal counsel.[4] The orphans' court held a hearing on the petitions on January 13, 2023, wherein Father, who remained incarcerated, appeared and was represented by counsel.[5] The Agency presented the testimony of ongoing case supervisor, Stacie Pederson. Additionally, Father testified on his own behalf. Thereafter, by decree dated January 13, 2023, and entered January 17, 2023, the court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

On February 10, 2023, Father filed a timely notice of appeal. In lieu of a concise statement of errors complained of on appeal, Counsel submitted an accompanying statement of intention to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4). **See re J.T.**, 983 A.2d 771, 774 (Pa. Super. 2009) (holding that the decision of counsel to follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case was proper). The orphans' court filed a Rule 1925(a) opinion on March 14, 2023. Counsel filed a petition to withdraw, as well as an **Anders** brief, on April 4, 2023.

---

[4] A review of the certified record revealed that Attorney Heasley served as the Child's legal counsel and guardian *ad litem* ("GAL"). **See** N.T. Hearing, 1/12/23 at 1. During the hearing, Attorney Heasley represented that the Child's "legal and best interests merge." **Id.** at 23; **see also** **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. Super. 2020).

[5] We are unable to discern from the record if Father participated virtually, or if he were physically present.

When counsel seeks to withdraw pursuant to **Anders** and its progeny,[6] this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020) *quoting* **Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa. Super. 2010). To procedurally withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for **Anders** briefs:

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record,

---

[6] This Court extended the **Anders** procedure to appeals from decrees terminating parental rights involuntarily in **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992).

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Instantly, Counsel filed a petition to withdraw certifying her conscientious review of the record and determination that Father's appeal is frivolous. Counsel further attached a copy of a ***Millisock*** letter informing Father of his rights with respect to her petition.[7] Likewise, Counsel filed an ***Anders*** brief that included a summary of the procedural history and facts but does not cite to the record. Further, in concluding that the appeal is wholly frivolous, Counsel failed to articulate fully the controlling caselaw for Section 2511(a)(5) and (8). Nevertheless, we remain cognizant that the framework of ***Anders*** and ***Santiago*** requires "substantial[], if not perfect[]," compliance. ***See Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa. Super. 2007). We thus conclude that Counsel's brief is substantially compliant with ***Anders*** and ***Santiago***.[8]

Having concluded that Counsel complied with the procedural requirements of ***Anders***/***Santiago***, we must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel,

---

[7] Father has not responded to Counsel's petition to withdraw and ***Anders*** brief.

[8] Notwithstanding our ultimate determination that Counsel's brief is substantially compliant, we caution counsel regarding adherence to the briefing requirements of ***Santiago***.

intentionally or not, missed or misstated." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*). Counsel raises challenges as to the sufficiency of the evidence in the ***Anders*** brief and presents the following issues for our review:

> A. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ 2511(a)(1), (2), (5), and (8)]?
>
> B. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. [§ 2511(b)]?

***Anders*** Brief at 3 (superfluous capitalization and suggested answers omitted).[9]

We review involuntary termination orders for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. ***See Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may

---

[9] Child's counsel/GAL submitted a letter to this Court in support of the decree.

not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." **In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021). An abuse of discretion in this context exists "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id**.

The involuntary termination of parental rights is governed at statute by Section 2511 of the Adoption Act, which requires a bifurcated analysis. **See** 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under one of the eleven enumerated grounds set forth at Section 2511(a). Only if the court determines that the petitioner has established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which focuses upon the child's needs and welfare. **See In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must satisfy both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **C.M.**, 255 A.3d at 359 (citation omitted).

In the case *sub judice*, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). As indicated, we have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of

Section 2511(a), as well as Section 2511(b).[10] *See In re B.L.W.*, 843 A.2d

380, 384 (Pa. Super. 2004). Instantly, we will analyze the court's termination

decree pursuant to Section 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
>> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

---

[10] Significantly, we do not find subsections (a)(5) and (8) applicable to Father, as he was incarcerated at the time of Child's removal. *See In re C.S.*, 761 A.2d 1197, 1200 n.5 (Pa. Super. 2000) (*en banc*) (stating that Section 2511(a)(5) and (8) did not provide a basis for terminating the father's parental rights when he was incarcerated at the time of the child's removal from the mother's care); *see also In re Z.P.*, 994 A.2d 1108, 1123 n.2 (Pa. Super. 2010) (same).

In order to establish grounds for termination pursuant to Section 2511(a)(1) "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, '[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" *C.M.*, 255 A.3d at 363-364 (citation omitted) (footnote omitted). While undefined,

> our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

*L.A.K.*, 265 A.3d at 592 (internal citations and quotation marks omitted). Furthermore, "[f]ortitude is required, as a parent must act with 'reasonable firmness' to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." *Id.* (citation omitted). It follows that incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012), *discussing* *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975).

Instantly, the orphans' court concluded that Father failed to perform his affirmative duties. **See** Orphans' Court Opinion, 3/14/23, at 7-8. The court found as follows:

> [Father] was incarcerated the entirety of [C]hild's life. The total sum of his contacts [with] his son were five letters. He never sent any cards or presents at Christmas or other holidays to his son. This lack of any reasonable attempt to have meaningful contact with his child is well below the standard of any parent to affirmatively make a good-faith interest and effort to maintain the parent child relationship even in difficult circumstances. **In re D.J.S.**[, 737 A.2d 283, 286 (Pa. Super. 1999)] (letters, some support and gifts insufficient to prevent termination of parental rights of an incarcerated parent).
>
> [] Father claimed to have completed court-ordered programs and that he had [c]ertificates of [c]ompletion for those programs. However[,] the Agency never received any certificates or information as to what programs the Father supposedly had attended or completed. [Father]'s response when asked why he did not send the certificates to the Agency was that he didn't know how to make copies. Stacie Pederson testified she personally faxed [F]ather applications for counsel for the [d]ependency proceedings. [Father] never requested counsel or communicated about the hearings, yet acknowledged receiving the "court stuff[."] In cases involving an incarcerated parent "the focus is on whether the parent utilized resources available in prison to maintain a relationship with his or her child." **In re B., N.M.**[, 856 A.2d 847, 855 (Pa. Super. 2004)]. [] Father's failure to attend programs, or if he did, inquire as to how to make copies of his certificates to send to the Agency is not indicative of a parent utilizing all available resources to maintain the parent-child relationship. The lack of interest shown by [] Father in the legal proceedings involving his child demonstrates his complete lack of effort to continue a relationship with his child.

**Id.**

A review of the record supports the orphans' court's finding of grounds

for termination under Section 2511(a)(1). Father was incarcerated since June 2018, prior to Child's birth, and remained incarcerated at the time of the termination hearing, over four years later, without contact with Child. **See** N.T., 1/13/23, at 5, 22. There was no dispute that Father sent five letters to the Agency during an unspecified time period. However, Father did not send any cards or presents to Child. **See id.** at 5, 7, 13, 16. Father did not request any visitation or telephone contact. **See id.** at 14, 17. Moreover, Father did not participate in any of the dependency proceedings, despite notification from the Agency.[11] **See id.** at 7-8, 15.

With respect to Father's claim that he completed court-ordered programs, specifically, anger management, drug and alcohol, parenting, and batterer's group, Father conceded that he failed to provide certificates of completion to the Agency. **See id.** at 19-20. When questioned why he did not provide these certificates to the Agency, Father responded that he did not know how to make copies. **See id.** at 20. The court, however, rejected Father's excuse. **See** Orphans' Court Opinion, 3/14/23, at 9 ("The [c]ourt attaches no credibility to [] Father's excuse[] as to why he provided no documentation to the Agency.").

_____

[11] Father testified that he submitted applications, as best we can discern, as it relates to obtaining counsel. **See** N.T., 1/13/23, at 19. These assertions, however, are unsubstantiated.

- 12 -

As indicated *supra*, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. ***S.P.***, 47 A.3d at 828. Thus, given Father's lack of contact and commitment, the orphans' court's termination pursuant to Section 2511(a)(1) is supported by competent evidence in the record, and we find no abuse of discretion. ***See C.M.***, 255 A.3d at 358.

Having found sufficient grounds for termination pursuant to Section 2511(a)(1), we next must determine whether termination was proper under Section 2511(b), which affords primary consideration to the developmental, physical and emotional needs and welfare of the child. ***See T.S.M.***, 71 A.3d at 267.[12] As outlined in ***T.S.M.***,

_____

[12] Our Supreme Court recently issued an opinion addressing the standard for analyzing the developmental, physical, and emotional needs and welfare of a child pursuant to 23 Pa.C.S. § 2511(b), with a particular eye on the issue of severing the parental-bond. ***See Interest of K.T.***, 2023 WL 4092986 (Pa. June 21, 2023). Specifically, the Court held that, in making a Section 2511(b) determination, a trial court must analyze the following four factors: (1) whether the parental bond is "necessary and beneficial to the child;" (2) "the child's need for permanency and length of time in foster care;" (3) "whether the child is in a preadoptive home and bonded with foster parents;" and (4) "whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety and stability." ***Id***. Moreover, the Court explained that, when reviewing the nature of the parental bond, a court must consider "whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***Id***. Importantly, the ***K.T.*** Court's decision is particularly relevant to an analysis of an existing parental-bond. As indicated herein, however, Father was incarcerated since before Child's birth, without

The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, [. . .] evaluation of a child's bonds is not always an easy task.

*Id.* (internal citations omitted).

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should

---

any visitation or contact. As such, the evidence of a parental bond between Father and Child is virtually non-existent. Nonetheless, a review of the orphans' court's reasoning demonstrates it considered the lack of parental bond between Father and Child, Child's need for permanency, Child's bond with his foster parents, and whether foster parents can meet Child's developmental, physical and emotional needs. Hence, we conclude that the orphans' court's decision is consistent with *K.T.*

also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) *quoting In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal quotation marks and citations omitted) (brackets in original) (ellipses added).

In determining that termination of Father's parental rights favors Child's needs and welfare under Section 2511(b), the orphans' court noted the lack of a bond between Father and Child and emphasized the safety and stability provided by Child's foster parents. *See* Orphans' Court Opinion, 3/14/23, at 8-9. The court stated:

> [Child] has many needs. … His needs are being met in his pre-adoptive foster home. The foster parents are actively participating in the services necessary to provide [Child] the ability to have a productive life. [] Child is receiving love and attention and positively responding to being in a stable family situation. He calls his foster parents Mom and Dad and lives with his sibling. [Child] deserves a safe and secure life. [] Father has shown no desire to provide safety and security for his child. [Attorney Heasley] concurred with [Child]'s need for stability and the fact that the child only recognizes the foster parents as his support.

Orphans' Court Opinion, 3/14/23, at 8 (ellipses added) (citation to record omitted). Upon review, we agree and discern no abuse of discretion.

Herein, the record supports the finding that Child's developmental, physical, and emotional needs and welfare favor termination of parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267. Specifically, there is no evidence of any bond between Father and Child, as Father has been

- 15 -

incarcerated since prior to Child's birth with no visitation or contact. *See* N.T., 1/13/23, at 5, 14, 22. Further, Child is doing well in a pre-adoptive home where he is placed with a younger half-sibling and with foster parents, who are working to meet his behavioral and therapeutic needs. *See id.* at 6, 10-11, 15-16. Ms. Pederson disclosed that Child has behavioral health needs that he displayed upon placement in his foster home. *See id.* at 11. She stated that Child "throws tantrums that involve screaming, there's some physical aggression, attention-seeking behaviors, biting, angry outbursts." *Id.* Ms. Pederson testified that the foster parents "have been working with him, redirecting him. They have participated in several assessments for him to receive services. They also participated in [. . .] therapy services [. . .] to help address some of the behavioral health needs that he has [as well as] the history of trauma that he's experienced." *Id.* at 11. Despite noting that "more work is needed," Ms. Pederson testified that Child's behavior has improved. *Id.* at 12, 15-16. As such, Ms. Pederson opined that it would be harmful to Child if he were removed from his foster home. She explained:

> I think it would be more detrimental to his well[-]being to be removed from the foster home. He is building healthy attachments to the foster parents. He calls them mom and dad. He is starting to learn the concept of family, and a family unit. [A]nd he is [. . .] viewing his foster parents as the parental figures in his life. They have been the most stable caregivers for him in his life.

*Id.* at 12. She further expressed that it would be in Child's best interest to terminate Father's parental rights and acknowledged no negative effects on Child as a result. *Id.* at 12-13.

Based on the foregoing independent analysis of the orphans' court's termination of Father's parental rights, we agree with Counsel that the appeal from the decree terminating Father's parental rights pursuant to Section 2511(a)(1) and (b) is wholly frivolous and our review of the record does not reveal any overlooked non-frivolous issues.

Decree affirmed. Counsel's petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2023

- 17 -